```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF ALABAMA
                          NORTHERN DIVISION

LORINE MASON o/b/o              :
ELIZABETH LEE MASON,            :
                                :
     Plaintiff,                 :
                                :
vs.                             :     CIVIL ACTION 10-621-M
                                :
MICHAEL J. ASTRUE,              :
Commissioner of Social Security,:
                                :
     Defendant.                 :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff[1] seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income for children (hereinafter *SSI*) (Docs. 1, 14).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 22).  Oral argument was waived in this action (Doc. 21).  Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be

---

[1]The Court will refer to the child, Elizabeth, as the Plaintiff

**DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the most recent administrative decision, Plaintiff was ten years old and had completed a third-grade special education (Tr. 396-97). In claiming benefits, Plaintiff alleges disability due to mild mental retardation, attention deficit hyperactivity disorder (hereinafter *ADHD*), oppositional defiant disorder, and seizure disorder (Doc. 13).

The Plaintiff filed an application for SSI on September 27, 2005 (*see* Tr. 350). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although

---

although this action was brought by her mother.

Mason suffered from severe impairments, she was not disabled (Tr. 347-64). Plaintiff requested review of the hearing decision (Tr. 365) by the Appeals Council which determined that the ALJ had not adequately evaluated the evidence regarding Mason's intellectual status (Tr. 371-74). Following another evidentiary hearing, the ALJ determined that although she had severe impairments, Plaintiff was not mentally retarded and was not disabled (Tr. 18-38). Plaintiff requested review of the hearing decision (Tr. 12-14) by the Appeals Council, but that request was denied (Tr. 6-8).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Mason alleges that: (1) The ALJ erred in finding that she did not have mild mental retardation; (2) the ALJ erred in failing to find that she did not meet the requirements of Listing 112.05C or 112.05D; and (3) the ALJ did not provide any rationale for his findings regarding medical equivalence (Doc. 14). Defendant has responded to—and denies—these claims (Doc. 17). The relevant evidence of record follows.[2]

School records from F. S. Ervin Elementary School show that Mason scored mostly unsatisfactory scores in kindergarten; she

---

[2]The Court will only summarize the evidence specifically relevant

was absent one out of every seven days (Tr. 86-88). Third grade records demonstrate satisfactory marks in all categories rated excellent, satisfactory, or unsatisfactory for the first and second grading periods (Tr. 95). Mason received an A in health (with a score of 90) and a C in spelling (with a score of 74) in the first grading period while receiving a modified grade of C in fourth grade reading (with a score of 73) and a B in Health (with a score of 85) in the second grading period.

On October 4, 2006, a Psycho-Educational evaluation of Mason was completed for the Wilcox County School System by a Psychometrist; test results were considered valid and a reliable estimate of Plaintiff's cognitive skills and abilities (Tr. 102-13). On the Wechsler Intelligence Scale for Children-Fourth Edition (WISC-IV), Mason had a verbal comprehension (VCI) score of 63, a perceptual reasoning (PRI) score of 65, a working memory (WMI) score of 91, a processing speed (PSI) score of 68, and a full scale (FSIQ) score of 63 (Tr. 104); her FSIQ was in the extremely low range of intelligence. On the Comprehensive Test of Nonverbal Intelligence (C-TONI), Plaintiff scored an overall intelligence quotient of 80 which falls in the below average range of nonverbal ability. On the Woodcock-Johnson III

---

to the claims raised herein.

4

Test of Achievement (WJ-III), Mason was found to be low average in her oral skills, academic skills, written language, broad reading and written expression; her abilities in mathematics and the ability to apply academic skills were very low as was her overall level of achievement. Plaintiff "demonstrated a significant relative weakness in mathematics" (Tr. 109). On the Behavior Assessment System for Children-Second Edition (BASC-2) Teacher/Parent Rating Scales, Plaintiff's teacher indicated significant concerns in the area of learning problems, adaptive skills, adaptability, and social skills; Mason's mother indicated concerns in the area of depression and atypicality. The Psychometrist interviewed the teacher stated that Plaintiff is stubborn and rarely participates in class though she "interacts and gets along with her peers and teacher well;" she indicated that Plaintiff "received modifications and accommodations such as an increased amount of time to complete activities" (Tr. 112). It was the teacher's opinion that Plaintiff did not need special education services so much as one-on-one assistance.

On March 25, 2008, Plaintiff's school teacher, Gladys P. Witherspoon, completed a questionnaire in which she stated that Mason performed below grade level compared to other children,

indicating that she could not work independently and went to the special education classroom; she was not, however, a behavior problem and had no problems with social skills (Tr. 98-101). Witherspoon indicated that Plaintiff had extreme limitation in her ability to acquire and use information and attend and complete tasks; *extreme limitation* was defined as "a limitation that interferes very seriously with the ability to independently initiate, sustain or complete activities" (Tr. 101).

School records show that in the fourth grade, Plaintiff scored satisfactory in all classes and an A in health (with a score of 100) for the first and second grading periods (Tr. 115). On the Stanford Achievement Test, Plaintiff scored in the low range for reading and mathematics, while scoring middle range in language (Tr. 116).

On January 24, 2005, Dr. Timothy S. Baltz, at the Cahaba Center for Mental Health, examined Plaintiff and noted that she was very alert but was very quiet; he further noted that she "[s]huts down, and doesn't talk anymore after a period of time" (Tr. 274-75). The Psychiatrist's diagnosis was ADHD combined type, oppositional defiant behavior, seizure disorder, enuresis,

6

and constipation; he prescribed Metadate.[3]  On June 13, Baltz noted that Mason's "teacher was bragging on the big improvement in her behavior at the end of the school year" in kindergarten (Tr. 273).  Plaintiff's mother said that she was behaving a little better at home as well.  On November 14, Baltz saw Mason and added probable borderline IQ to her diagnosis (TR. 290).  On March 8, 2006, the Psychiatrist did a mental status exam and noted that Plaintiff gets confused on her ABC's and in counting to twenty; he prescribed Focalin[4] and discharged the Metadate prescription (Tr. 289).  On May 10, Baltz noted that Mason talks to herself, but knew her ABC's and could count to twenty (Tr. 288).  On September 19, the Psychiatrist noted that Plaintiff was doing much better in school, though she was in special education (Tr. 321).

On January 22, 2007, Neuropsychologist John Goff examined Plaintiff and noted that she was shy, had logical and coherent discourse though sparse, but seemed slow in her motor movements (which may be because of medications) (Tr. 309-14).  Mason was given the WISC-IV and obtained a full scale IQ score of 52, the

---

[3]*Metadate* is a central nervous system stimulant used in the treatment of ADHD.  **Error! Main Document Only.***Physician's Desk Reference* 3261-64 (62nd ed. 2008).

[4]*Focalin* is used in the treatment of Attention Deficit Hyperactivity Disorder in patients six and older.  **Error! Main Document Only.***Physician's Desk Reference* 2239 (62nd ed. 2008).

lower end of the mildly retarded range of psychometric intelligence; all of her index scores fell within the mildly retarded range with particularly low scores on the memory subscales. Her expressive vocabulary skills were better. On the Reitan-Indiana Aphasia Screening Test for Children, she had particular difficulties with math and its symbols. On the Wide Range Achievement Test (WRAT-IV), Plaintiff's word reading and spelling scores were at the beginning-first grade level while her sentence comprehension and math computation scores were at the beginning-kindergarten level; Mason was in the second grade. It was Goff's impression that Plaintiff would be classified as educable mentally retarded; "she did not function at an age appropriate manner in terms of her cognition or communication" (Tr. 312). The Neuropsychologist further noted that Mason "has some minor difficulties with motor coordination and [] needs assistance in dealing with her daily activities skills, such as dressing, eating and grooming and such" (*id.*). Goff's diagnosis was "rule out Cognitive Disorder, NOS, Associated with a Seizure Disorder [and; low-mild mental retardation" (*id.*). The Neuropsychologist completed a Broad Functional Limitations Form in which he indicated that Plaintiff had extreme limitation in her ability to acquire and use information and marked limitation

in her ability to attend and complete tasks and interact and relate to others.

On February 20, 2007, Dr. Baltz noted that Plaintiff had made all A's and B's, though in special education; she knew her ABC's (Tr. 320). On the same date, the doctor dropped the *probable* in Mason's diagnosis of probable borderline IQ (Tr. 319). Baltz saw Plaintiff on July 17 and October 16, 2007, and on the latter date, noted that Plaintiff was making B's and C's in school; she was restless throughout the examination (Tr. 318). On February 19, 2008, Mason's mother reported that she was acting better at home; Baltz noted that she was restless during the examination (Tr. 339). On June 17, the Psychiatrist noted that Plaintiff was not so restless (Tr. 338). On November 18, Dr. Baltz examined Mason but noted nothing new (Tr. 344).

On November 5, 2008, Psychologist Nina E. Tocci examined Plaintiff whose affect was appropriate, normal, and stable; she spoke without impediment (Tr. 332-37). She was oriented to time, place, and person and demonstrated fair attention and scattered concentration; she had a poor fund of information and comprehension. Thought content was appropriate but she had little insight into her behavior and poor social judgment; Tocci thought that she was functioning within the mentally retarded

range of intellectual ability.  On administration of the WISC-IV, Plaintiff a Full Scale composite score of 50; her "overall performance is classified in the mentally retarded range," though Tocci indicated the results were questionable (Tr. 334). In summarizing, the Psychologist noted that Mason was functioning within the mentally retarded range of intellectual ability, though she noted, based on the previous testing records in the file, that the diagnosis of mental retardation was not appropriate.  Tocci completed a medical source statement in which she indicated that Plaintiff was extremely limited in her ability to understand, remember, carry out, and make judgments on complex instructions; Mason was markedly limited in her ability to make judgments on simple work-related decisions and respond appropriately to usual work situation and to changes in a routine work setting.

At the evidentiary hearing, Plaintiff's mother testified that her daughter would be ten years old the next month and that she was in the fourth grade in special education (Tr. 393-403). Mason was doing better in the special education classes; she has problems with memory.

Psychologist Doug McKeown testified at the hearing, as a medical expert (hereinafter *ME*), that he was familiar with

Plaintiff's medical record and summarized the evidence on the record (Tr. 404-09). The ME noted that the testing suggested that Mason had significant cognitive limitations, but that Dr Baltz had consistently found her to have borderline intellectual function; the medications seemed to have stabilized and Mason was doing better in school and other activities as a result. Though testing consistently suggested mild mental retardation, her achievements demonstrated higher functioning. He suggested that she had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. It was McKeown's opinion that Mason was functioning in the 60-to-70 IQ range and that that would be a lifelong level. When questioned by Plaintiff's attorney, the ME stated that he had noted that Psychologist Goff and Mason's teacher had both indicated that Plaintiff was extremely limited in her ability to acquire and use information, but that he had a problem with that conclusion because that was her highest area of functioning. McKeown noted that Dr. Baltz had given Mason a GAF score of 50.

In his determination, the ALJ first summarized all of the medical evidence of record (Tr. 18-38). He then found that Plaintiff's ADHD is controlled with medication. The ALJ found

11

that Plaintiff's testimony was not credible in that the limitations were inconsistent with the record evidence. In reaching his determination that Mason was not disabled, the ALJ "relied heavily upon the opinion of the impartial medical expert," gave substantial weight to Dr. Baltz's assessment and opinions, and gave little weight to Psychologist Goff's opinion regarding Plaintiff's mental functioning. The ALJ further indicated that the opinions of Dr. Freij and Tocci were of considerable probative value; although the teacher's opinion was of considerable probative value, he gave little weight to her opinion of Mason's extreme limitations. The ALJ went on to find that Plaintiff had less than marked limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others while she had no limitations in her ability to move about and manipulate objects, care for herself, and in her health and physical well-being. This concludes the relevant medical evidence of record.

Plaintiff has raised three claims in bringing this action. Those claims are that (1) the ALJ erred in finding that she did not have mild mental retardation; (2) that the ALJ erred in finding that she did not meet the requirements of Listing 112.05C or 112.05D; and (3) that the ALJ did not provide any

rationale for his findings regarding medical equivalence (Doc. 14). Because the Court finds these claims to be intertwined, the Court will examine them together rather than breaking them into their component parts.

Mental Retardation is a disorder "characterized by significantly subaverage intellectual functioning (an IQ of approximately 70 or below) with onset before age 18 years and concurrent deficits or impairments in adaptive functioning." *Diagnostic and Statistical Manual of Mental Disorders*, 4th ed. Text Revision (hereinafter *DSM-IV-TR* or *Manual*), p. 39. Expanding this definition, the Manual goes on to state:

> The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 years (Criterion C).

DSM-IV-TR, p. 41. The Manual states, though, that "Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or

impairments in adaptive functioning." DSM-IV-TR, p. 42. "Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group sociocultural background, and community setting." DSM-IV-TR, p. 42.

The social security listing of impairments for children essentially tracks the language of the DSM-IV-TR. Specifically, Listing 112.05 is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 112.05 (2010). Listing 112.05C requires "[a] valid verbal, performance, or full scale IQ of 59 or less" while Listing 112.05D requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 112.05C and D (2010). The Eleventh Circuit Court of Appeals has held that "a valid I.Q. score need not be conclusive of mental retardation where the score is inconsistent with other evidence in the record of the claimant's daily activities and behavior." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (*citing*

*Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986).

In this action, the ALJ credited Dr. Baltz's assessment and opinions, doing so because the Psychiatrist is a medical doctor and Mason's treating physician. These are reasonable determinations. While Plaintiff is correct in asserting that Dr. Baltz did not have objective criterion, *i.e.*, IQ tests, in reaching his determination that she functioned within the borderline range of intelligence, he did have more than three years of personal interaction with her through his examinations.

The ALJ rejected Psychologist Goff's opinion, finding that he had only a one-time examination and that he was not as qualified to make a determination as the Psychiatrist. While a Neuropsychologist is a specialist, the ALJ felt that a Psychiatrist was more qualified; the Court is in no position to find otherwise. Furthermore, while the Court agrees with Mason that it was inappropriate for the ALJ to have remarked that Goff's opinion was purchased ("It is emphasized that the claimant underwent the examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the

15

report"), it is not reversible error in light of the other evidence of record (Tr. 32). The Court further notes that Baltz's opinion that Plaintiff was not mentally retarded was also the independent conclusion of Psychologist Tocci (Tr. 335). In addition, ME McKeown reached the same conclusion (*see* Tr. 404-09).

With regard to the assertion that Plaintiff satisfied the listing requirements, the IQ tests would seem, at first blush, to support a conclusion of disability. However, school reports and Mason's Mother's reports to the Psychiatrist indicated that Plaintiff functions well in the school setting from time-to-time; though her grades were not consistently at peak performance—and, yes, the Court is aware that Plaintiff is in a special education curriculum—she did perform well on more than one occasion. The Court further notes that one teacher even ventured the opinion that Mason did not need to be in special education so much as have one-one-one instruction (Tr. 112).

As far as Plaintiff's claim that the ALJ did not provide any rationale for his findings regarding medical equivalence, the Court finds that the ALJ's determination could have been better written. His failure to point to specific facts to support his conclusions regarding each of the six domains in

16

that section of the determination left the reader to look for the evidence in the balance of the opinion. While the Court finds that support for his conclusions could be found in the balance of the opinion, it certainly made the determination less coherent for the reader. This was not reversible error.

Plaintiff has raised three claims in this action. While the evidence could support a determination contrary to the one reached by the ALJ, the Court cannot say that the ALJ's decision is not supported by substantial evidence. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 6th day of July, 2011.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE